IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN LASALVIA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 10 C 3076 |
| CITY OF EVANSTON, OFFICER GIESE, OFFICER PANEK, AND SERGEANT GLEW, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On May 18, 2010, Plaintiff Kevin LaSalvia brought the present six-count Complaint against Defendants City of Evanston, Police Officers Thomas Giese and Joseph Panek, and Sergeant Ryan Glew for violations of his constitutional rights. *See* 42 U.S.C. § 1983. LaSalvia also alleges the state law claims of battery, abuse of process, and indemnification pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court denies Defendants' motion.

BACKGROUND

**I. Northern District of Illinois Local Rule 56.1**

Northern District of Illinois Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Local Rule 56.1(a)(3) requires the moving party to provide

"a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Also, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

Accordingly, pursuant to the Local Rules, the Court will not consider any additional facts that LaSalvia proposed in his Local Rule 56.1(b)(3)(B) Response, but instead must rely on his Local Rule 56.1(b)(3)(C) Statement of Additional Facts when making factual determinations. *See id.* at 643; *see also Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809 (7th Cir. 2005) ("Local Rule 56.1 *requires specifically* that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement ... of any additional facts that require the denial of summary judgment.'") (emphasis in original). The Court also disregards any citations to the record in the parties' legal memoranda that do not reference their Local Rule 56.1 Statements of Fact. *See Malec v. Sanford,* 191 F.R.D. 581, 586 (N.D. Ill. 2000) ("Citations in the fact section should be to the 56.1(a) or (b) statement of facts only"); *see, e.g., Gross v. Town of Cicero, Ill.,* 619 F.3d 697, 708 (7th Cir. 2010).

Meanwhile, the purpose of Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts – not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply

with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). The requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,* 233 F.3d at 528. Also, the Court may disregard statements and responses that do not properly cite to the record. *See Cichon,* 401 F.3d at 809-10; *see also* Fed.R.Civ.P. 56(e)(2). Finally, it is well established that "district courts are entitled to expect strict compliance with Local Rule 56.1." *Raymond v. Ameritech Corp.,* 442 F.3d 600, 604 (7th Cir. 2006). With these standards in mind, the Court turns to the relevant facts of this case.

## II. Relevant Facts

LaSalvia, who was thirty-two years old at the time of his arrest, resides in Palatine, Illinois and is an automobile mechanic. (R. 18, Defs.' Rule 56.1 Stmt. Facts ¶ 1.) Defendant City of Evanston is a municipal corporation located in the Northern District of Illinois and the City of Evanston employed Defendant Officers Giese, Panek, and Glew during the relevant time period. (*Id*. ¶ 2.)

On April 5, 2010, Officer Christopher Tamburrino – who is not a named Defendant in this lawsuit – attempted to effectuate a traffic stop of LaSalvia after witnessing what he believed to be a hand-to-hand drug transaction. (*Id*. ¶ 7.) Officer Tamburrino then verified that LaSalvia had an active warrant for his arrest for driving while his license was suspended. (*Id*. ¶ 8.) Upon realizing that a police officer was following him, LaSalvia pulled his car to the right side of the road, stopped, and then ran from the scene. (*Id*. ¶ 9; R. 25, Pl.'s Stmt. Add'l Facts ¶ 3.) Thereafter, Officer Tamburrino radioed this information and gave the location of the stop and the direction in which LaSalvia was running. (Def.'s Stmt. Facts ¶ 10.) Officers Giese and Panek

3

were in the area and responded to the call. (*Id.* ¶ 11.) Upon their arrival, Officers Giese and Panek observed LaSalvia exit his car and start running north on Dodge Avenue in Evanston. (*Id.* ¶ 12.) Immediately after exiting their squad car, Officers Giese and Panek yelled "Police. Stop running. You're under arrest." (*Id*. ¶ 14.) Eventually, LaSalvia stopped running. (Pl's Add'l Facts ¶ 5.)

According to LaSalvia, once he stopped running he put his hands in the air. (*Id*. ¶ 6.) The parties dispute whether Officers Giese and Panek tackled LaSalvia at that point, but LaSalvia was then on the ground after which one of the officers put his knee on LaSalvia's back while the other officer handcuffed LaSalvia. (*Id*. ¶¶ 7, 9.) Afterwards, Officer Giese punched LaSalvia on the left side of LaSalvia's head several times. (*Id*. ¶¶ 12, 13; Def.'s Stmt. Facts ¶ 17.) It is undisputed that Officer Panek was standing right next to Officer Giese when he punched LaSalvia in the head with a closed fist, and, even though Officer Panek could see Officer Giese punching LaSalvia in the head, he did nothing to try to stop Officer Giese's use of force. (Pl.'s Stmt. Facts ¶ 14.) Meanwhile, LaSalvia testified that once the officers picked him up off the ground, he immediately stated that he wanted to go to the hospital for medical attention. (*Id.* ¶ 21.)

Officers Panek and Giese took LaSalvia back to the squad cars and Officer Giese spoke with Officer Tamburrino after which they searched the scene for contraband. (Defs.' Stmt. Facts ¶ 24.) Sergeant Glew arrived on the scene and spoke to Officer Tamburrino after which he found out about the use of force in effectuating LaSalvia's arrest. (Pl.'s Stmt. Facts ¶ 26.) Officers Giese and Panek subsequently transported LaSalvia to the Evanston Police Department for booking. (Def.'s Stmt. Facts ¶ 25; Pl.'s Stmt. Facts ¶ 23.) LaSalvia testified that he asked

4

for medical attention at that time. (Pl.'s Stmt. Facts ¶ 28.) Meanwhile, Officer Tamburrino remained at the scene of LaSalvia's arrest to tend to LaSalvia's car and passenger. (Def.'s Stmt. Facts ¶ 26.)

After arriving at the booking room of the police station, LaSalvia testified that he told the officers he needed medical attention. (Pl.'s Stmt. Facts ¶ 30.) Once Sergeant Glew arrived at the booking room, he spoke to LaSalvia about what had occurred and LaSalvia told him that he had been punched. (Def.'s Stmt. Facts ¶ 34.) Sergeant Glew asked LaSalvia if he were in pain, to which LaSalvia responded that he could not hear. (*Id.* ¶ 36.) Sergeant Glew then summoned an ambulance. (*Id.* ¶ 37.) A team of paramedics from the Evanston Department of Fire and Life Safety arrived shortly thereafter and evaluated LaSalvia. (*Id.* ¶ 38.)

After the paramedics evaluated LaSalvia, two police officers arrived to escort LaSalvia to the hospital – one to ride in the ambulance with LaSalvia and one to follow the ambulance in a squad car – as required by the protocols of both the Evanston police and fire departments. (*Id.* ¶ 42.) Upon LaSalvia's arrival at Evanston Hospital, Dr. Rachel Norris, a board-certified emergency medicine physician, evaluated LaSalvia. (*Id.* ¶¶ 46, 47.) Dr. Norris made the diagnosis that LaSalvia had a left ruptured eardrum caused by a blow to his head. (Pl.'s Stmt. Facts ¶¶ 15, 16.) When he first arrived at Evanston Hospital, LaSalvia reported that his pain was "intolerable." (*Id.* ¶¶ 18, 38.) Dr. Norris noted that upon LaSalvia's discharge from the emergency room, LaSalvia indicated that his pain level was "tolerable," and Dr. Norris discharged him in "good" condition. (*Id.* ¶ 55.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

5

as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).[1] A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

### I. Counts I – Excessive Force Claim

In Count I of his Complaint, LaSalvia alleges that Officer Giese used excessive force while arresting him. Courts review excessive force claims under the Fourth Amendment's objective reasonableness standard. *See Cyrus v. Town of Mukwonago,* 624 F.3d 856, 861 (7th Cir. 2010) (citing *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). "An officer's use of force is unreasonable from a constitutional point of view only if, 'judging from the totality of circumstances at the time of the arrest, the officer used greater force

---

[1] Effective December 1, 2010, Federal Rule of Civil Procedure 56 was amended. Among other changes, the summary judgment standard previously enumerated in subsection (c) was moved to subsection (a), and its wording was changed from "genuine issue" to "genuine dispute." Nevertheless, according to the 2010 Advisory Committee Notes, "the standard for granting summary judgment remains unchanged."

than was reasonably necessary to make the arrest.'" *Gonzalez v. City of Elgin,* 578 F.3d 526, 539 (7th Cir. 2009) (citation omitted). "The nature and extent of the force that may reasonably be used to effectuate an arrest depends on the specific circumstances of the arrest, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Cyrus,* 624 F.3d at 861-62 (citation omitted).

Construing the facts and all reasonable inferences in a light most favorable to LaSalvia, *see Scott*, 550 U.S. at 378, once LaSalvia realized that Officer Tamburrino was following him, he pulled his car to the right side of the road, stopped, and then ran from the scene. Officer Tamburrino radioed this information giving the location of the stop and the direction in which LaSalvia was running after which Officers Giese and Panek responded to the call. Indeed, when Officers Giese and Panek arrived at the scene, they observed LaSalvia exit his car and start running north on Dodge Avenue in Evanston. The officers yelled, "Police. Stop running. You're under arrest." Eventually, LaSalvia stopped running and put his hands in the air. Although it is unclear whether Officers Giese and Panek tackled LaSalvia, once LaSalvia was on the ground, one of the officers put his knee on LaSalvia's back while the other officer handcuffed him. While LaSalvia was already on the ground with a knee holding him down, Officer Giese punched LaSalvia on the left side of his head which resulted in a ruptured eardrum. Although LaSalvia initially ran from the traffic stop and Defendant Officers testified that LaSalvia resisted arrest,[2] by the time Officer Giese punched LaSalvia in the head, the officers

---

[2] Although Defendants point to their testimony about LaSalvia resisting arrest in their legal memoranda, they do not reference their Local Rule 56.1 Statement of Facts in their brief regarding this "undisputed" fact, and thus the Court disregards this factual assertion. *See Malec*

7

had restrained LaSalvia, handcuffed him, and held him firmly on the ground. *See Cyrus*, 624 F.3d at 861-62. Based on the totality of circumstances at the time of the arrest viewed in a light most favorable to LaSalvia, there is a dispute of material fact whether Officer Giese used greater force than was reasonably necessary to arrest LaSalvia because the officers had already subdued and restrained him when Officer Giese punched him in the head. *See Gonzalez,* 578 F.3d at 539; *see also Holmes v. Village of Hoffman Estate,* 511 F.3d 673, 686 (7th Cir. 2007) (slamming plaintiff's head against car was excessive where plaintiff had already been secured) (citing *Lee v. Ferraro,* 284 F.3d 1188, 1198 (11th Cir. 2002)). Because LaSalvia has presented evidence creating a genuine dispute as to material facts for trial, the Court denies Defendants' summary judgment motion as to LaSalvia's excessive force claim alleged in Count I of the Complaint.

## II.     Count II – Failure to Intervene Claim

In Count II of his Complaint, LaSalvia alleges that Officer Panek violated his constitutional rights by failing to intervene and stop Officer Giese from using excessive force in effectuating his arrest. A police officer who fails to intervene to prevent another law enforcement officer from violating a plaintiff's constitutional rights can be held liable under Section 1983 if the plaintiff can establish that the police officer: "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a

---

*v. Sanford,* 191 F.R.D. 581, 586 (N.D. Ill. 2000); *see, e.g., Gross v. Town of Cicero, Ill.,* 619 F.3d 697, 708 (7th Cir. 2010). In fact, there is a genuine dispute as to the material fact of whether LaSalvia resisted arrest because he properly disputed Defendant Officers' Local Rule 56.1 Statement of Fact ¶ 20. Finally, the Court rejects Defendant Officers' argument that LaSalvia's testimony alone is not sufficient to withstand summary judgment. *See Berry v. Chicago Transit Auth.,* 618 F.3d 688, 691 (7th Cir. 2010) ("we long ago buried – or at least tried to bury – the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is 'self-serving.'").

realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey,* 581 F.3d 467, 472 (7th Cir. 2009); *see also Abdullahi v. City of Madison,* 423 F.3d 763, 774 (7th Cir. 2005).

Here, it is undisputed that Officer Panek was standing next to Officer Giese when he punched LaSalvia in the head with a closed fist, and, even though Officer Panek could see Officer Giese punching LaSalvia in the head, he did nothing to try to stop Officer Giese's use of force. Construing these undisputed facts and all reasonable inferences in LaSalvia's favor, along with the amount of force Officer Giese used under the circumstances, LaSalvia has presented evidence raising a genuine dispute as to the material facts that Officer Panek had reason to know that Officer Giese was using excessive force and that he had a realistic opportunity to intervene to prevent Officer Giese's actions. *See Anderson,* 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Because there is a genuine dispute as to the material facts involving LaSalvia's failure to intervene claim, the Court denies Defendants' summary judgment motion as to Count II of the Complaint.

### III.    Count III – Medical Treatment Claim

Next, LaSalvia alleges that Defendant Officers, including Sergeant Glew, failed to provide prompt medical care. The Fourth Amendment's objective reasonableness standard applies to LaSalvia's medical care claim because LaSalvia was under arrest, but there had been no judicial determination of probable cause. *See Sallenger v. City of Springfield, Ill.,* 630 F.3d 499, 503 (7th Cir. 2010). To establish a Fourth Amendment denial of medical care claim, LaSalvia must establish that (1) Defendants' failure to provide him with medical care was objectively unreasonable under the circumstances, and (2) Defendants' conduct caused him

9

harm. *See Williams v. Rodriguez,* 509 F.3d 392, 403 (7th Cir. 2007); *Lopez v. City of Chicago,* 464 F.3d 711, 718-19 (7th Cir. 2006). Certain factors guide courts in determining what constitutes objectively unreasonable conduct in the context of a constitutional medical treatment case, including: (1) whether the officer was aware of the arrestee's medical need; (2) the seriousness of the medical need balanced against the requested treatment; and (3) any police interests. *See Sallenger,* 630 F.3d at 503; *Williams,* 509 F.3d at 403.

Because LaSalvia eventually received medical treatment on the evening of his arrest, at issue is whether the delay in his treatment was constitutionally unreasonable. *See Sallenger,* 630 F.3d at 504; *McGowan v. Hulick,* 612 F.3d 636, 640 (7th Cir. 2010); *see also Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008) ("delay in the provision of medical treatment for painful conditions – even non-life-threatening conditions – can support a [medical treatment] claim"). As the Seventh Circuit teaches, "[d]elay is not a factor that is either always, or never, significant. Instead, the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan,* 612 F.3d at 640. Meanwhile, "when an officer causes injuries by using excessive force," the "law imposes a higher standard – 'a duty of *prompt* attention to any medical need to which the beating might give rise.'" *Walker v. Sheahan,* 526 F.3d 973, 980 (7th Cir. 2008) (emphasis in original) (citation omitted).

Although the parties dispute when LaSalvia first requested medical care, viewing the facts in LaSalvia's favor, the officers were aware of his medical condition by the time they arrived at the Evanston Police Department to book LaSalvia, if not sooner when Officer Giese punched him at the scene of his arrest. After the officers booked LaSalvia, Sergeant Glew asked LaSalvia if he were in pain, to which LaSalvia responded that he could not hear. Sergeant Glew

then summoned an ambulance. A team of paramedics from the Evanston Department of Fire and Life Safety arrived shortly thereafter and evaluated LaSalvia. After the paramedics evaluated LaSalvia, two police officers escorted LaSalvia to the Evanston Hospital. At that time, Dr. Rachel Norris, a board-certified emergency medicine physician, evaluated LaSalvia and diagnosed that LaSalvia had a left ruptured eardrum caused by Officer Giese's punches. Although he reported that his pain was intolerable when he first arrived at Evanston Hospital, by the time of his discharge from the emergency room after his treatment, LaSalvia indicated that his pain level was tolerable. Also, Dr. Norris discharged him in good condition.

Although the parties dispute the amount of time that lapsed between when the officers became aware of LaSalvia's medical need and when Dr. Norris treated him at Evanston Hospital, viewing the evidence in LaSalvia's favor, the delay was approximately three hours. Once Dr. Norris treated LaSalvia, he indicated that his pain was tolerable and Dr. Norris released him in good condition. If the Court were reviewing this lapse of time and the severity of LaSalvia's injury under *Sallenger* and *Williams* alone, these facts would present a close call as to the reasonableness of the three hour delay. *See Langston v. Peters,* 100 F.3d 1235, 1240 (7th Cir. 1996) ("We have held in the past that a two-hour delay is not an unreasonably long wait for an x-ray, an examination, and possibly a set of a fracture."). Under the circumstances, however, the officers must meet a higher standard – they had the duty of providing prompt medical attention because the evidence viewed in LaSalvia's favor reveals that Officer Giese caused LaSalvia's ruptured ear drum. *See Walker,* 526 F.3d at 980. In other words, under the circumstances viewed in LaSalvia's favor, Defendant Officers did not meet their burden of providing prompt medical attention for LaSalvia after Officer Giese punched him in the head. And, although "the

11

Constitution does not require arrests to be conducted in comfort," *see Sides v. City of Champaign,* 496 F.3d 820, 828 (7th Cir. 2007), evidence in the record reveals that LaSalvia was more than uncomfortable, his pain was intolerable. Finally, because evidence of LaSalvia's diagnosis and treatment would sufficiently assist the trier of fact in determining whether the delay in treatment exacerbated his condition, namely, the evidence reflects that his pain became more tolerable after his treatment, the Court rejects Defendants' argument that LaSalvia was required to present additional medical evidence in support of his claim. *See Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008); *Williams v. Liefer,* 491 F.3d 710, 715 (7th Cir. 2007). As such, the Court denies Defendants' summary judgment motion as to Count III of the Complaint.

## IV. Qualified Immunity

Defendant Officers also argue that qualified immunity shields them from liability. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "In actions under 42 U.S.C. § 1983 alleging violations of constitutional rights, qualified immunity shields an official from liability for civil damages, provided that the illegality of the official's conduct was not clearly established at the time he acted." *Roe v. Elyea,* 631 F.3d 843, 858 (7th Cir. 2011). In determining whether Defendant Officers are entitled to qualified immunity, the Court must decide whether: (1) the facts as alleged make out a violation of a constitutional right; and (2) that right was clearly established at the time of the Officer Defendants' misconduct. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

Because LaSalvia has presented evidence raising a genuine dispute concerning his constitutional claims against Defendant Officers, the Court turns to the second *Saucier* prong,

namely, whether LaSalvia's rights were clearly established at the time of the alleged misconduct. "In determining whether a right was 'clearly established' at the time of an official action, we must look at the right violated in a 'particularized' sense, rather than 'at a high level of generality.'" *Roe,* 631 F.3d at 858 (citation omitted). "To be established clearly, however, there is no need that 'the very action in question [have] previously been held unlawful.'" *Safford Unified Sch. Dist. No. 1 v. Redding,* ___ U.S. ___,129 S.Ct. 2633, 2643, 174 L.Ed.2d 354 (2009) (citation omitted). Thus, the Court's inquiry is whether the state of the law at the time that Defendant Officers acted gave them reasonable notice that their conduct violated the Constitution. *See Roe*, 631 F.3d at 858.

In their summary judgment memorandum, "the defendants provisionally concede that the Fourth Amendment protection against unreasonable seizures – the basis of all of LaSalvia's federal claims – was established at the time of LaSalvia's arrest." (*See* 16, Summ. J. Mem., at 13.) Because Defendants admit that they cannot fulfill the second prong of the *Saucier* standard, Defendant Officers' qualified immunity argument fails.

**V. State Law Claims – Counts IV through VI**

Because the Court denies Defendants' summary judgment motion concerning LaSalvia's constitutional claims over which the Court has original jurisdiction, the Court also denies Defendant Officers' request that the Court relinquish its supplemental jurisdiction over LaSalvia's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Anderson v. Aon Corp.,* 614 F.3d 361, 365 (7th Cir. 2010).

**CONCLUSION**

For the foregoing reasons, the Court denies Defendants' Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(a).

**Date:** April 15, 2011

                         **ENTERED**

                        _____
                        **AMY J. ST. EVE**
                        **United States District Court Judge**