Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 3076 | **DATE** | 11/21/2011 |
| **CASE TITLE** | LaSalvia vs. City of Evanston et al | | |

**DOCKET ENTRY TEXT**

The Court grants Defendants' motion in limine [49]( Mot. No. 6) regarding adverse inferences.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

     Presently before the Court is Defendants' motion in limine for an "order barring [] Plaintiff, his representatives, or his witnesses[,] from giving any testimony or argument regarding adverse inferences from the missing recording of the main [City of Evanston ("City")] police station sally port on April 5, 2010." (R. 49, Defs.' Mot. No. 6.) Plaintiff objects on the basis that he is entitled to a spoliation of evidence jury instruction at trial, which would permit the jury to draw an adverse inference from the missing recordings if it finds that Defendants intentionally destroyed the recordings in bad faith. *See, e.g.,* Seventh Circuit Pattern Civil Jury Instruction 1.20 (2008) (hereinafter, "missing evidence instruction").
     For the reasons explained below, the Court grants Defendants' motion in limine.[1]

| | Courtroom Deputy Initials: | KF |
|---|---|---|

---

[1]On October 24, 2011, the Court reserved decision on Defendants' motion, and ordered Plaintiff to file a supplemental brief that details his evidentiary and legal basis for a missing evidence instruction, with a response to follow. (R. 63.) Plaintiff filed his supplemental brief on October 31, 2011, and Defendants responded on November 7, 2011.

## BACKGROUND[2]

Following Plaintiff's arrest on April 5, 2010, Defendants Thomas Giese and Joseph Panek, both police officers employed by the City, transported Plaintiff to the Evanston Police Department ("Police Department") for booking. It is undisputed that on the day of Plaintiff's arrest, the "sally port"[3] of the Police Department had a properly functioning security camera that would have recorded audio and video of Plaintiff. (R. 65, Pl.'s Br., Ex. 12, Defs.' Ans. to Pl.'s Requests to Admit ¶¶ 1-5.) Any of the individual Defendants "could have" requested that the recordings "be preserved," but none of them did so. (*Id.* ¶¶ 7-16, 20-21.) Defendants explain that the "footage from the camera was not requested in any Request to Produce or the subject of a preservation order prior to it being destroyed." (*Id.* ¶¶ 20-21.) According to Defendants, "the footage was not reviewed prior to its destruction." (*Id.* ¶¶ 4-5.)

On April 30, 2010, before Plaintiff commenced this action, Plaintiff filed a state Freedom of Information Act ("FOIA") request with the City for "any and all documents, photographs, audiotapes, videotapes, reports, memoranda, notes, and/or statements" relating to Plaintiff's arrest. (Pl.'s Br., Ex. 1.) Defendants' response, if any, is not contained in the record. Following the commencement of this action on May 18, 2010, Plaintiff took certain discovery regarding the video recordings.

On July 29, 2010, Plaintiff propounded the following interrogatories on Defendants, to which Defendants responded on October 1, 2010:

> Plaintiff's Interrogatory No. 12: Were there any cameras that recorded, or that might have recorded, the Plaintiff's interaction with any City of Evanston police officer on the date of his arrest? If the answer is in the affirmative, please identify the location of any such camera (whether at the police station, in a squad car, or elsewhere), whether the recording(s) from the camera(s) have been preserved, and also explain what actions have been undertaken, and by whom, in order to preserve the recording(s).
>
> Defendants' Response to Interrogatory No. 12: Plaintiff's flight from his automobile was recorded by the camera in the patrol car . . . . Two cameras located in the in the [sic] south booking area of the Evanston Police Department recorded Plaintiff's detention at the police station and the arrival of emergency medical personnel. These recordings have been preserved by the Evanston Police Department and shall be tendered in accordance with this request.
>
> Plaintiff's Interrogatory No. 13: Has any document or recording (audio or video) requested in the Plaintiff's request to produce been lost, not kept, discarded or destroyed? . . . .
>
> Defendants' Response to Interrogatory No. 13: While arguably not responsive to this request, nor to any document production request, video recording from the sallyport at the Evanston Police department was destroyed prior to being requested in Plaintiff's Request to Produce. This video recording did not include audio recording. The recording was destroyed in accordance with local record retention laws and as usual and customary practice of the Evanston Police Department.

---

[2] The Court presumes familiarity with the underlying facts of this case, and incorporates by reference the background section of its April 15, 2011 Memorandum and Order that denied Defendants' motion for summary judgment. (*See* R. 31.)

[3] The parties do not define "sally port," but the Court observes that the phrase typically refers to "the secure area where officers park when they bring in arrestees." *United States v. Jamal*, 87 F.3d 913, 915 (7th Cir. 1996).

(*Id.*, Exs. 2, 9.)  Additionally on July 29, 2010, Plaintiff requested that Defendants produce certain records, to which Defendants responded on October 1, 2010:

> Plaintiff's Request No. 7:  All transcripts, recordings (whether video or audio), and radio transmissions (or documents memorializing the same) relating to the events described in the Complaint, including, but not limited to, dispatch and 911 calls.
>
> Defendants' Response to Request No. 7:  Will produce audio CD.
>
> Plaintiff's Request No. 14:  Any and all photographs, tape recordings, video tapes, other recordings, or any other tangible non-documentary evidence, relating to any of the allegations contained in the Complaint.  With respect to any photographs, if the originals are kept in color, the Plaintiff requests that color copies be provided.
>
> Defendants' Response to Request No. 14:  Will produce.  See documents Bate-stamped.  Paper copies of photos are re-produced in black and white, but color copies are contained on CD "Photos of PL."
>
> Plaintiff's Request No. 17:  Any and all documents and tangible non-documentary evidence, including, but not limited to, photographs, video tapes or audio tapes, or other recordings, created or maintained by OPS, IPRA, or any department of internal affairs, regarding the allegations contained in the Complaint.
>
> Defendants' Response to Request No. 17:  Will produce.  See documents Bate-stamped EV-15-EV-32.

(*Id.*, Exs. 3, 7.)  On October 15, 2010, Plaintiff propounded another request for production, to which Defendants responded on November 12, 2010:

> Second Request for Production of Documents No. 33:  Any and all documents relating to Police Department general orders, Department manuals, procedural guides, rules, policies, and/or practices that were in effect on the date of the incident relating to:  (a) Preserving recordings (video and audio) from the police station; (b) Preserving recordings (video and audio) from squad cars; (c) Retaining recordings (video and audio) from the police station; and (d) Retaining recordings (video and audio) from squad cars.
>
> Defendants' Response to Request No. 33:  See general order attached hereto as Bates Nos. EV 86 - EV88.  Investigation continues.

(*Id.*, Exs. 4, 11.)  The "general order" that Defendants attached to their response appears to set forth the City's procedures for processing subpoenas.  (*Id.*)

During their depositions, Defendants Glew, Panek, and Giese each admitted that they were aware of the security camera in the sally port on April 5, 2010.  (Pl.'s Br., Exs. 6, 7, 8.)  Defendant Glew speculated that the data from the camera would have been downloaded to "some kind of server."  (*Id.*, Ex. 8.)  In response to counsel's question about "how long . . . the video and audio from the sally port had been preserved," the sergeant responded, "I think it's 30 days."  (*Id.*)  To ensure the preservation of the audio or video, according to Sergeant Glew, "a request has to be made" through a "standardized form."  (*Id.*)  In the case of "a request by a patrolman, the supervisor has to sign."  (*Id.*)  Defendant Glew further testified that neither he nor any other Defendant acted to preserve the data, despite their ability to do so.  (*Id.*)  As he explained, "At that time it did not seem to be something we needed for our investigation."  (*Id.*)

**LEGAL STANDARD**

A jury may draw an adverse inference from missing evidence when a party has a duty to preserve evidence, yet intentionally destroys such evidence in bad faith. *See Trask–Morton v. Motel 6 Operating L.P.,* 534 F.3d 672, 681 (7th Cir. 2008); *Faas v. Sears, Roebuck & Co.,* 532 F.3d 633, 644 (7th Cir. 2008). "The crucial element is not that evidence was destroyed but rather the reasons for the destruction." *Faas,* 532 F.3d at 644; *see also Park v. City of Chicago,* 297 F.3d 606, 615 (7th Cir. 2002) (noting that the "destruction of or inability to produce a document, standing alone, does not warrant an inference that the document, if produced, would have contained information adverse to the [plaintiff's] case"). "Bad faith" is a prerequisite to imposing sanctions for the destruction of evidence. *See Trask–Morton,* 534 F.3d at 681. "A document is destroyed in bad faith if it is destroyed for the purpose of hiding adverse information." *Faas,* 532 F.3d at 644; *see also Norman-Nunnery v. Madison Area Tech. Coll.,* 625 F.3d 422, 428 (7th Cir. 2010).

**ANALYSIS**

In this case, the parties dispute whether sufficient evidence exists from which a jury may infer that the missing recordings "were intentionally destroyed in bad faith." *Everett v. Cook County,* 655 F.3d 723, 727 (7th Cir. 2011). Defendants admit that the recordings were destroyed, but point to a claimed dearth of evidence suggesting that the destruction was intentional and in bad faith. Plaintiff responds with the following proffered facts from which he contends that a jury could infer bad faith: (1) Plaintiff filed a FOIA request for the recordings 25 days after the arrest, and Defendant Glew testified that the recordings were preserved for 30 days; (2) Defendants produced audio/video recordings from cameras in the squad cars and the booking room, but not the sally port; (3) in response to a discovery request, Defendants initially agreed to produce the recordings, but subsequently stated that the recordings were destroyed before the request was made; and (4) Defendants failed to produce any document retention policy. (Pl.'s Br. at 4-5.)

As an initial matter, some of Plaintiff's factual assertions lack adequate evidentiary support, particularly his assertions that Sergeant Glew admitted that the recordings were preserved for 30 days,[4] and that Defendants agreed to produce the sally port recordings prior to their destruction.[5] This lack of record evidence ultimately dooms Plaintiff's attempts to show his entitlement to a missing evidence instruction. *See, e.g., Spesco, Inc. v. Gen. Elec. Co.,* 719 F.2d 233, 239 (7th Cir. 1983) (stating, in the context of a proposed missing evidence jury instruction, that "[t]his circuit requires a showing of an intentional act by the party in possession of the allegedly lost or destroyed evidence to support the tendered instruction").

Most significantly, the reason for the destruction of the recordings is altogether unclear. So too is the

---

[4]It is not clear whether Defendant Glew had personal knowledge that the sally port recordings were preserved for 30 days, or whether he offered speculation based on his knowledge of internal practice or otherwise. (*See* Pl.'s Br., Ex. 8, Glew Dep. at 46 (Q: Do you know how long . . . the video and audio from the sally port had been preserved?" A: I think it's 30 days.").

[5]Plaintiff juxtaposes Defendants' responses to Plaintiff's document requests with Defendants' responses to Plaintiff's interrogatories to suggest that Defendants destroyed the recordings after Plaintiff requested the recordings. (*Compare, e.g.,* Pl.'s Br., Ex. 10, Defs.' Resp. to Pl.'s Req. for Prod. Nos. 7, 14 ("Will produce"), *with, e.g., id.,* Ex. 9, Defs.' Resp. to Pl.'s Interrog. No. 13 (recordings destroyed prior to production request).) Plaintiff's suggestion, however, overlooks critical facts: (1) Plaintiff never specifically requested the sally port recordings, and his requests were otherwise vague; and likewise (2) Defendants never admitted to then-possessing a sally port recording.

identity of the actor (be it human, mechanical, or Mother Nature herself) that destroyed the recordings. As Defendants point out, "there is no competent evidence of what happened to the tape because Plaintiff failed to take discovery from any witnesses with knowledge about the recording equipment or the retention and preservation of recordings." (Defs.'Br. at 3.) Indeed, Plaintiff has had numerous opportunities to obtain information about the missing recordings, but inexplicably limited his discovery in that regard. Plaintiff relied exclusively on the testimony of the individual Defendants, each of whom admittedly lacked personal knowledge about the technical and administrative aspects of the security camera in the sally port. Plaintiff never sought to take discovery from a City record custodian or technician, or any person otherwise knowledgeable about the City's record-keeping policies, practices and/or procedures. *See, e.g.*, Fed. R. Civ. P. 30(b)(6), 31(a)(4).

Although Plaintiff requested production of the City's internal record retention policies, if any, Plaintiff never moved to compel such production pursuant to Rule 37(a) after he was unable to obtain the requested information. In the absence of a motion to compel, Plaintiff's inability to obtain relevant information cannot relieve him of his evidentiary burden to show sufficient evidence of bad faith. *See, e.g.*, *Yaodi Hu v. Park Nat'l Bank*, 333 F. Appx. 87, 90 (7th Cir. 2009) (noting that failure to move to compel may evince a "lack of diligence"); *Kalis v. Colgate–Palmolive Co.*, 231 F.3d 1049, 1058 n. 5 (7th Cir. 2000) ("[A] party needing additional discovery is under an obligation to bring the issue before the court in an expeditious manner."); *Rolls-Royce Corp. v. Alcor Engine Co., Inc.*, No. 04-CV-0968, 2005 WL 1875770, at *7 (S.D. Ind. Aug. 5, 2005) (opining that a party's failure to respond to discovery does not excuse an inadequate evidentiary record, where the party with the burden failed to compel the discovery); *Native A. Arts v. Earthdweller, Ltd.*, No. 01 C 2370, 2002 WL 1173513, at *3 (N.D. Ill. May 31, 2002) (holding that evidence of the plaintiff's discovery violations was inadmissible at trial because the defendant never moved to compel under Rule 37(a)). To the extent the City has any internal record retention policies and/or procedures, that information is not contained in the record, and consequently Plaintiff cannot take advantage of any presumptions that may otherwise arise out of the violation of internal policies. *See Park,* 297 F.3d at 616 (noting the general rule that violation of a record retention regulation creates a presumption that the missing record contained evidence adverse to the violator).

## CONCLUSION

The Court concludes, based on the record developed during discovery, that Plaintiff has failed to meet his burden of producing sufficient evidence such that he may argue his entitlement to an adverse inference before a jury.[6] *See, e.g.*, *Park*, 297 F.3d at 615 ("[A party's] destruction of or inability to produce a document, standing alone, does not warrant an inference that the document, if produced, would have contained information adverse to [that party's] case."). Accordingly, the Court grants Defendants' motion in limine for an "order barring [] Plaintiff, his representatives, or his witnesses[,] from giving any testimony or argument regarding adverse inferences from the missing recording of the main Evanston police station sally port on April 5, 2010." (R. 49, Defs.' Mot. No. 6.)

---

[6]Plaintiff has not requested leave to take additional discovery, but the Court notes that discovery is long closed, and trial is scheduled to begin in approximately six weeks. Reopening discovery at this late juncture, when both parties have had a full and fair opportunity to participate in the discovery process, would unfairly prejudice Defendants, and unduly delay these proceedings.