# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 3076 | **DATE** | 6/28/2012 |
| **CASE TITLE** | LaSalvia vs. City of Evanston et al | | |

**DOCKET ENTRY TEXT**

Plaintiff's petition for attorney's fees [100] is granted in the amount of $45,396.88.

■[ For further details see text below.]                    Notices mailed by Judicial staff.

---

## STATEMENT

Before the Court is Plaintiff's petition for attorney's fees pursuant to 42 U.S.C. § 1988(b). For the following reasons, the Court grants the petition in the amount of $45,396.88.

### BACKGROUND

On May 18, 2010, Plaintiff Kevin LaSalvia, through his attorney Basileios Foutris, filed this action against Defendant Police Officers Thomas Giese and Joseph Panek, and Police Sergeant Ryan Glew, alleging violations of his constitutional rights.[1] *See* 42 U.S.C. § 1983. The case proceeded to trial, at which Mr. Fourtris and another attorney, Scott Dolezel, represented Plaintiff. On January 5, 2012, following a three-day trial, the jury returned a verdict for Plaintiff on his excessive force claim against Defendant Giese and awarded $2,300 in compensatory damages. The jury returned verdicts for the defense on each of the remaining claims: failure to intervene against Defendant Panek, and failure to provide medical care against Defendants Giese, Panek, and Glew. (R. 83, 88.) The Court entered judgment in accordance with the jury verdict. (*Id.*) On March 29, 2012, Plaintiff filed the present petition for attorney's fees. (R. 100.)

| | Courtroom Deputy Initials: | KF |
|---|---|---|

---

[1] Plaintiff also asserted state law claims, but voluntarily dismissed them before trial. (R. 74, 77.)

# LEGAL STANDARD

The prevailing party in a § 1983 action may recover reasonable attorney's fees. *See* 42 U.S.C. § 1988. To determine a reasonable fee, the Seventh Circuit instructs district courts to use the lodestar method, namely to multiply the "number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Pickett v. Sheridan Health Care Cent.*, 664 F.3d 632, 639 (7th Cir. 2011) (quoting *Hensley, v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 40 (1983)). This method "applies even in cases where the attorney represents the prevailing party pursuant to a contingent fee agreement." *Pickett*, 664 F.3d at 639. After arriving at the lodestar figure, "other considerations . . . may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434. If a "plaintiff prevails on only some of his interrelated claims, . . . . the 'district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.'" *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010) (quoting *Hensley*, 461 U.S. at 436-37); *see also DeCola v. Keel*, No. 09 C 3799, 2010 WL 5232972, at *1 (N.D. Ill. Dec. 16, 2010) (reducing lodestar by 50% "based on counsel's limited success").

# ANALYSIS

Here, Plaintiff seeks $128,437.50 in attorney's fees as a prevailing party under § 1988(b). (R. 100, Pl.'s Pet. at 15.) Defendant does not challenge Plaintiff's status as a prevailing party, but argues that $17,700 in attorney's fees would better reflect the results of the trial.[2] (R. 102, Def.'s Resp. at 1.) In approaching Plaintiff's fee petition, the Court first calculates the lodestar amount, with reference to Defendant's specific objections, and then determines whether that figure is appropriate given the circumstances of this case. *See Hensley*, 461 U.S. at 434; *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012).

## I.     Calculation of Lodestar

### A.     Number of Hours

The first question is whether the number of hours that Plaintiff seeks to recover is reasonable. The Court addresses Defendant's objections as to each of Plaintiff's attorneys.

#### 1.     Attorney Dolezel

Plaintiff seeks to recover 56.25 hours for Attorney Dolezel, reflecting counsel's work from December 20, 2011 until January 5, 2012.[3] (R. 100, Pl.'s Pet., Ex. 5.) Defendant objects, reasoning that the addition of

---

[2] Alternatively, Defendant asks the Court to disallow recovery of attorney's fees in their entirety pursuant to *Farrar v. Hobby*, 506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992) (holding that plaintiff who sought $17 million but received $1 was not entitled to recover attorney's fees). Defendant's reliance on *Farrar*, however, is misplaced. As the Seventh Circuit has recognized, *Farrar* applies only to cases where the jury awards nominal damages. *See Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009). Here, the jury award of $2,300 in compensatory damages, upon a finding that Defendant violated Plaintiff's constitutional rights, is not nominal. *See Hyde v. Small*, 123 F.3d 583, 585 (7th Cir. 1997) (upholding civil rights plaintiff's recovery of attorney's fees, where jury awarded $500 in compensatory damages).

[3] Some of Mr. Dolezal's billing entries are erroneously dated 2011, rather than 2012. (R. 100, Ex. 5.) This typographical error is of little moment because the parties' briefs and context of the

Attorney Dolezal, shortly before trial, resulted in the unreasonable duplication of attorney efforts. (*See* R. 102, Def.'s Resp. at 11-12.) The Court agrees. *See Schlacher v. Law Offices of Phillip J. Rotche & Assocs.*, 574 F.3d 852, 859 (7th Cir. 2009) ("[courts should] scrutinize . . . for duplicative billing when multiple lawyers seek fees").

Even if this case was not "easy . . . to win" (R. 100, Pl.'s Pet., Ex. 1, 2  7), Plaintiff makes no suggestion that the case was unusually complex. *See Jardien v. Winston Net., Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989) (observing that the fee applicant must demonstrate why the work of a second attorney is "fully justified"). Plaintiff's constitutional and state law claims rested on a well-developed body of law, and the factual issues at trial were far from exceptional. *Compare Schlacher*, 574 F.3d at 858 (affirming fee reduction when "one competent attorney would have sufficed"), *with DuPuy v. McEwan*, 648 F. Supp. 2d 1007, 1021 (N.D. Ill. 2009) (declining to reduce fee award when four lawyers did complementary work on single complex case).  In attempting to justify the addition of a second attorney for trial, Plaintiff argues primarily that since the defense used multiple attorneys, it was reasonable for Plaintiff to do so as well. (R. 103, Pl.'s Rep. at 13.)  That argument is not persuasive.  Not only was defense counsel responsible for representing three individuals, but the defense attorneys were in-house staff who Defendant does not seek to bill to opposing counsel. (R. 100, Ex. 7 at 1.)

Under these circumstances, Plaintiff has failed to establish that it was reasonable for Mr. Dolezal to bill 56.25 hours in this case. *See Johnson*, 668 F.3d at 932 (time must be "reasonably required to see the case through to trial"); *Schlacher*, 574 F.3d at 858; *Jardien*, 888 F.2d at 1160 (disallowing award for a second attorney when work "was not fully justified").  Rather than disallowing all of these hours, the Court exercises its discretion and reduces Mr. Dolezal's compensable time to 9 hours, the figure that Defendant suggests in his Rule 56.3 Joint Statement. (R. 100, Ex. 1.)

### 2.     Attorney Foutris

#### a.     Failed Claims

Defendant seeks to exclude any time that counsel spent on unsuccessful claims. (R. 102.) Def.'s Resp. at 12); *see also Hensley*, 461 U.S. at 435 (stating that "work on an unsuccessful claim [is not] expended in pursuit of the ultimate result achieved").  Defendant does not, however, object to any specific time entries, nor is it practical or possible in this case, like many civil rights cases, to isolate the time that counsel devoted to the unsuccessful claims.[4]  *See Jaffe v. Radmond*, 142 F.3d 409, 413 (7th Cir. 1998) ("[W]hen claims are interrelated, as is often the case in civil rights litigation, time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims.").  To the extent a fee reduction is warranted based on Plaintiff's limited success, the Court will consider that question after calculating the lodestar. *See Hensley*, 461 U.S. at 434 ("other considerations . . . may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained'").

---

billing entries make clear that his work occurred in 2012. *See C.W. v. Bd. of Educ. of City of Chi., Dist. 299*, No. 11 C 2349, 2012 WL 355360, at *11 (N.D. Ill. 2012 Feb. 1, 2012).

[4]  Although Plaintiff's successful claim of excessive force against Defendant Geise arose before Plaintiff's post-arrest claims against Defendants Panek and Glew, defense counsel represented during discovery that "[e]ach individually named defendant has knowledge of the circumstances of Plaintiff's *arrest . . . .*" (R. 100, Pl.'s Pet., Ex. 12 (emphasis added).)  Indeed, Defendant Panek was present at the arrest and Defendant Glew observed Plaintiff's injuries at the police station following the arrest.  Plaintiff represents that he would not have litigated this case differently in the absence of the failed claims. (R. 103. Pl.'s Rep. at 7.)

### b.	Non-Compensable Activities

Defendant objects generally that Plaintiff seeks to recover time spent on "clerical tasks or other non-allowable charges."  (R. 102, Def.'s Resp. at 11); *see also Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999) (stating that courts "should disallow" recovery for clerical work that is not "sufficiently complex" to warrant an attorney's time) (internal citation omitted); *Mattenson v. Baxter Healthcare Corp.*, No. 02 C 3283, 2005 WL 1204616, at *3 (N.D. Ill. Feb. 11, 2005).  Although Defendant's argument is somewhat vague, the Court disallows two entries that appear to constitute clerical-type work: .25 hours on 12/14/11 for verification of trial date, and .25 hours on 12/22/11 for "email[ing] witness list to court."  (R. 100, Ex. 3 at 10-11.)

### c.	Block billing

Defendant objects to Plaintiff's counsel's purported use of "block billing."  (R. 102, Def.'s Resp. at 11); *see also DuPuy*, 648 F. Supp. 2d at 1029 (describing block billing as "lumping several different activities into one line item").  Although block billing "is not [] prohibited" *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006), the court may "reduce the award accordingly" if the documention is "inadequate." *Hensley*, 461 U.S. at 433; *see also Duran v. Town of Cicero*, No. 01 C 6858, at *15 (N.D. Ill. Apr. 16, 2012).

Here, Defendant argues that counsel's use of block billing renders it "impossible to discern whether the total hours that are block billed include clerical tasks or other non-allowable charges."  (R. 102, Def.'s Resp. at 11.)  Having reviewed the record, the Court finds Plaintiff's request for 7.50 hours for Mr. Foutris, reflected in a single January 5, 2012 entry, to be problematic.  The billing description reads:  "Finalize closing argument; attend trial; await jury verdict."  (R. 100, Ex. 3 at 11.)  Not only does this description somewhat obfuscate the specific tasks that counsel performed over that 7.5 hour period, but counsel's time appears to include time awaiting the jury's verdict, which courts have held is not compensable.  *See Warfield v. City of Chi.*, 733 F. Supp. 2d 950, 960 (N.D. Ill. 2010) (finding hours spent awaiting jury verdict "not reasonably expended").  Accordingly, the Court sustains Defendant's objection, and exercises its discretion to reduce the January 5, 2012 entry from 7.5 hours to 4 hours.

### d.	Quarter-Hour Billing

Defendant challenges Plaintiff's counsel's use of quarter-hour billing, arguing that use of quarter-hour rather than tenth-hour increments unreasonably inflates attorney time.  (R. 102, Def.'s Resp. at 11.)  Plaintiff's counsel replies that he routinely bills by the quarter-hour.  (R. 103, Pl.'s Rep. at 12.)  Quarter-hour billing is not per se unreasonable, *see Garcia v. R.J.B. Props.*, 756 F. Supp. 2d 911, 918 (N.D. Ill 2010); *Harper v. Massanari*, No. 99 C 7393, 2002 WL 1998302, at *1-2 (N.D. Ill. Aug. 28, 2002), but may be unreasonable under the facts and circumstances of a given case.  *See Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986).  Here, Attorney Foutris' billing records contain 163 separate entries, 91 of which are for .25 hours, often on account of phone calls or e-mails.  (R. 100, Pl.'s Pet., Ex. 3.)  With regard to these 91 entries, the greatest possible amount by which the quarter-hour convention inflated Foutris' time is 24.45 hours (163 entries multiple by 9 minutes per entry),[5] or 8.4% of the 290 total hours that Plaintiff claims for Foutris.  (*Id.*, Ex. 1.)  Recognizing that not each of these .25 entries inflate Fourtis' time by 9 minutes, the Court exercises its discretion to reduce Fourtris' time by 5% on account of his use of quarter-hour billing.  *See Harper v. City of Chi. Heights*, 223 F.3d 593, 605 (7th Cir.

---

[5]	As compared to tenth-hour billing, quarter-hour billing inflates an attorney's actual time by a maximum of 9 minutes.  The greatest inflation under occurs when the lawyer works for one minute and rounds up:  under the tenth-hour convention, the lawyer would bill .10 hours, or six minutes (5 minutes too many), under the quarter-hour convention, the lawyer would bill .25 hours, or fifteen minutes (14 minutes too many).

2000).

## B. Market Rate

The Court now turns to the reasonableness of the hourly rates that Plaintiff requests. Plaintiff, as fee applicant, bears the burden of proving that his "requested rates are in line with those prevailing in the community." *Pickett*, 664 F.3d at 640. Where, as here, the attorney is retained under a contingent fee agreement, relevant evidence includes the "rates similarly experienced attorneys in the community charge paying clients for similar work" and the "fee awards the attorney has received in similar cases." *Id.* The district court is entitled to weigh the probative value of the evidence in the record, *id.* at 646, but "[a]n attorney's self-serving affidavit alone cannot satisfy the plaintiff's burden of establishing the market rate for that attorney's services." *Spegon*, 175 F.3d at 556. If the fee applicant fails to carry his burden, the district court may properly "make its own determination of a reasonable rate." *Pickett*, 644 F.3d at 640.

### 1. Attorney Dolezal

Plaintiff requests a rate of $350 per hour for Attorney Dolezel, who graduated from law school in 2002 and began practicing civil rights law in 2006, although not on the plaintiff-side until 2009. (R. 100, Ex. 4 at 3-10.) Defendant argues that Plaintiff has not meet his burden to show that the requested rate is reasonable. The Court agrees. Plaintiff has not provided evidence that Mr. Dolezal has ever been awarded or obtained the requested rate. Moreover, although the fee petition includes one affidavit attesting to the reasonableness of the requested rate, this single piece of evidence neither comes from a comparable attorney, nor provides any information about billing rates of comparable attorneys. (*Id.*, Ex. 20 (affidavit of civil rights and employment defense attorney)); *see also Elusta v. City of Chi.*, 760 F. Supp. 2d 792, 798 (N.D. Ill. 2010) (finding affidavits from attorneys in unrelated practice area"of limited use"). In the exercise of its discretion, the Court finds that $275 per hour is a reasonable market rate for Mr. Dolezel's work in this case. *See Pickett*, 664 F.3d at 640; *Alcazar-Anselmo v. City of Chi.*, No. 07 C 5246, 2011 WL 3236024, at *8 (N.D. Ill. July 27, 2011) ($300 for second chair attorney with ten years of relevant experience); *Lee v. City of Chi.*, No. 07 C 2035, 2008 WL 5377798, at *2 (N.D. Ill. Dec. 18, 2008) ($225 for second chair with one year of relevant experience).

### 2. Attorney Foutris

Plaintiff requests a rate of $375 per hour for Attorney Foutris, who has practiced civil rights law since he graduated from law school in 2000. (R. 100, Pl.'s Pet., Ex. 2, 1-7.) In support of his request, Plaintiff refers to awards in other cases and proffers nine affidavits from local attorneys who attest that the requested rate is reasonable. (*Id.* at 15 & Exs. 12-20.) Plaintiff does not offer any case where Attorney Foutris has been awarded $375 per hour.

Plaintiff has failed to carry his burden to show that $375 per hour is reasonable. First, the cases that Plaintiff offers are not sufficiently similar to this case because each case required multiple attorneys working on relatively complex cases. *See Neuros Co. v. KTurbo Inc.*, No. 08 C 5939, 2010 WL 547599, at *1 (N.D. Ill. Feb. 9, 2010) (case reasonably required five attorneys from three different law firms); *Entm't Software Ass'n v. Blagojevich*, No. 05 C 4265, 2006 WL 3694851, at *5 (N.D. Ill. Aug. 9, 2006) (case reasonably required five attorneys). Second, none of the nine supporting affidavits is persuasive. Seven of the affiants do not practice civil rights law. (R. 100, Exs. 14-20); *see also Elusta*, 760 F. Supp. 2d at 798. Regarding the two who do practice civil rights law, the first, Mr. Kulis, has nineteen years more experience than Mr. Foutris (and bills at $475 per hour). (*Id.*, Ex. 12.) The second, Mr. Ainsworth, who is very talented and has experience similar to Attorney Foutris, states that he has served as lead counsel in a dozen civil rights cases, and recovered $350 per hour in *Warfield v. City of Chicago*, No. 05-3712 (N.D. Ill.) The affidavit, however, does not discuss the complexity of that case (which involved numerous parties on both sides, a *Monell* claim, a police shooting

incident, and unlawful detention), and the case did not award the hourly rate of $375 that Attorney Foutris requests here. *See Warfield*, 733 F. Supp. 2d at 960. The affidavit is thus unhelpful.

In the exercise of its discretion, the Court finds that $325 is a reasonable market rate for Mr. Fourtris' legal work in this case. *See Pickett*, 664 F.3d at 640; *Blackwell v. Kalinowski*, No. 08 C 7257, 2012 WL 469962, at *4 (N.D. Ill. Feb. 13, 2012) ($325 for lead counsel with eight years of relevant experience); *Lee*, 2008 WL 5377798, at *1 ($325 for experienced attorney).

## C. Lodestar Calculation

Based on the discussion above, the Court arrives at a lodestar amount of $90,793.75, calculated as follows:

| Attorney | Requested Hours | Reductions | | | | Awarded Hours | Awarded Rate/Hour | Lodestar Amount |
|---|---|---|---|---|---|---|---|---|
| | | Block Billing | 1/4 Hour Billing | Second Attorney | Clerical | | | |
| Foutris | 290.00 | 3.50 | 14.25 | -- | .50 | 271.25 | $325.00 | $88,318.75 |
| Dolezal | 56.25 | -- | -- | 47.25 | -- | 9.00 | $275.00 | $2,475.00 |
| TOTAL | | | | | | | | $90,793.75 |

## II. Adjustment of Lodestar Under *Hensley*

The calculation of the lodestar does not end the inquiry. *See Hensley*, 461 U.S. at 434. As relevant in this case, where "a plaintiff prevails on only some of his interrelated claims, . . . the district court . . . may simply reduce the [lodestar amount] to account for limited success." *Sottoriva*, 617 F.3d at 975-77 (stating that because "[p]recision is impossible . . . the district court is entitled to considerable discretion in arriving at" a reasonable award). "[T]he critical inquiry" is whether the "fee award is reasonable in relation to the results [plaintiff] actually obtained." *Id.* at 975. Here, Defendant argues that Plaintiff's limited degree of success warrants a reduction of the lodestar amount. (R. 102, Def.'s Resp. at 14.) The Court agrees.

Plaintiff proceeded to trial on numerous constitutional claims, but prevailed on only one claim against one Defendant: excessive force against Defendant Giese in the amount of $2,300. The jury expressly found against Plaintiff, and for Defendants, on each of the other claims. Although it was not practical for the Court to reduce the lodestar amount to reflect Plaintiff's limited success at trial (*see supra* at § I(A)(2)(a)), a reduction of the lodestar under *Hensley* is appropriate. *See Sottoriva*, 617 F.3d at 975-77. Taking into account the purposes behind the fee-shifting statute, the Court exercises its discretion to reduce the lodestar amount by 50%. *See, e.g., DeCola*, 2010 WL 5232972, at *2 (reducing lodestar by 50% based on mixed result); *Garcia v. Oasis Legal Fin. Oper. Co.*, 608 F. Supp. 2d 975, 980 (N.D. Ill. 2009) (reducing lodestar by 50% because degree of success obtained, "while not entirely insignificant, is partial at best"); *Tauber v. City of Chi.*, 35 F. Supp. 2d 699, 702 (N.D. Ill. 1999) (reducing lodestar by 40% based on lack of success of total claims).

Applying a 50% reduction to the lodestar amount of $90,793.75, the Court arrives at a fee award of $45,396.88, which is reasonable under the particular circumstances of this case. *See Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1676, 176 L. Ed. 2d 494 (2010) ("Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge.") (quoting 42 U.S.C. § 1988).

## CONCLUSION

Plaintiff's petition for attorney's fees is granted in the amount of $45,396.88.